```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X

OSCAR ADOLFO NIETO-AYALA          :

                Plaintiff,        :
                                              08 Civ. 8347(LMM)
          -v-                     :

ERIC H. HOLDER, JR., ATTORNEY     :   MEMORANDUM AND ORDER
GENERAL; DEPARTMENT OF HOMELAND
SECURITY, UNITED STATES           :
CITIZENSHIP AND IMMIGRATION
SERVICES                          :

                Defendants.       :
- - - - - - - - - - - - - - - - X
```

McKENNA, D.J.

Plaintiff Oscar Adolfo Nieto-Ayala ("Nieto-Ayala") filed a writ of mandamus against United States Attorney General Michael B. Mukasey[1] and Department of Homeland Security, United States Citizenship and Immigration Service ("USCIS")(collectively, "the Government" or "the Defendants") seeking an order compelling the Government to continue "his enlargement on recognizance" until his pending application for asylum is considered. The Government moves to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Eric H. Holder, Jr. has been substituted as defendant in this matter.

the Federal Rules of Civil Procedure.  For the following reasons, the Government's motion to dismiss is GRANTED.

**FACTUAL BACKGROUND**

On August 8, 1984, Nieto-Ayala entered the United States as a lawful permanent resident. (Compl. at 2.)  On January 6, 1992, Nieto-Ayala was convicted, upon a plea of guilty, in the United States District Court for the District of New Jersey for facilitating the distribution of cocaine and was sentenced to four months imprisonment. (Id. at 2.)  On June 15, 1992, Nieto-Ayala was convicted in the New Jersey Superior Court, Morris County, for possession of cocaine and was sentenced to ninety days imprisonment. (Id. at 2.)

On June 10, 1992, an Immigration Judge ("IJ") ordered Nieto-Ayala deported, and on September 5, 1992, the Board of Immigration Appeals ("BIA") affirmed the IJ's decision, making the removal order final. (Id. at 2-3.)  On November 16, 1992, Nieto-Ayala was deported. (Id. at 3.)

In October 1993, Nieto-Ayala reentered the United States without permission of the Attorney General. (Id. at 3.)

In February 2005, Nieto-Ayala was arrested and charged with entering the United States after having been deported subsequent to a conviction for an aggravated felony in

2

violation of 8 U.S.C. § 1326(a) and (b)(2).  United States v. Nieto-Ayala, 2005 WL 2006703 at *1 (S.D.N.Y. Aug. 18, 2005).  On August 18, 2005, this Court dismissed the indictment against Nieto-Ayala, holding that because his counsel was ineffective during the deportation hearings, the underlying deportation order violated his due process rights and could not be the basis for the prior deportation element in the illegal reentry charge.  Nieto-Ayala, 2005 WL 2006703 at *2.

After the dismissal of the indictment, Immigration and Customs Enforcement ("ICE") placed Nieto-Ayala in removal proceedings, charging him as an alien convicted of a controlled substance violation. (Compl. Ex. B, Ex. C.)  On October 26, 2005, bond was posted on Nieto-Ayala's behalf and he was released from the custody of ICE. (Id. at 4.) Nieto-Ayala filed an application for a waiver of deportation under § 212(c) of the Immigration and Nationality Act ("INA"). (Id. at 3.)  On June 20, 2007, the IJ denied Nieto-Ayala's § 212(c) application and ordered Nieto-Ayala removed. (Id. Ex. B)  On June 18, 2008, the BIA dismissed Nieto-Ayala's appeal, making the removal order final. (Id. Ex. C.)  Nieto-Ayala did not seek a review of the removal order under the applicable review scheme in 8 U.S.C. § 1252.

3

On August 26, 2008, Nieto-Ayala filed an application for asylum with USCIS. (Compl. at 3-4; Ex. D.) USCIS, however, did not accept the application because it was incomplete. (Id. at 4; Ex. E.) Nieto-Ayala alleges that he has since provided USCIS with additional information to complete his application. (Id. at 4.)

On September 17, 2008, ICE sent a notice to the obligor who had posted bond on Nieto-Ayala's behalf, requesting that the obligor deliver Nieto-Ayala to the nearest ICE office within five days of October 7, 2008. (Id. Ex. F.)

On September 28, 2008, Nieto-Ayala filed this action for a writ of mandamus to compel the Government to continue his enlargement on bond until USCIS adjudicates his application for asylum. (Id. at 5-6.)

The Government moves to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Defs.' Mem. at 1.)

## DISCUSSION

### A. 12(b)(1) Motion to Dismiss Standard

Rule 12(b)(1) provides for the dismissal of a claim when a federal court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In addressing a Rule 12(b)(1) motion to dismiss, this Court must take all factual

4

allegations in the complaint as true, Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)(citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), and Nieto-Ayala bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. Marakova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

### B. Jurisdiction Under the REAL ID Act

The Government argues that this Court lacks jurisdiction to review Nieto-Ayala's challenge to his removal order or to stay his removal order under the REAL ID Act, 8 U.S.C. § 1252. (Defs.' Mem. at 2.) Nieto-Ayala does not contest that the REAL ID Act divests this Court of jurisdiction to consider a challenge to a removal order or to stay a removal order. (See Pl.'s Opp'n Mem. at 2.) Instead, Nieto-Ayala argues that he does not directly or indirectly challenge his removal order and thus, the REAL ID Act does not apply. (Id. at 1.)

### 1.

The REAL ID Act, 8 U.S.C. § 1252, divests district courts of jurisdiction to review direct challenges to final orders of removal for aliens, like Nieto-Ayala, that "are removable by reason of having committed a controlled substance violation." Arostegui v. Holder, 368 Fed. App'x.

169, 171 (2d Cir. 2010) (citing 8 U.S.C. § 1252(a)(2)(C)). Specifically, the REAL ID Act provides that "[n]otwithstanding any other provision of law . . . no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2)."  8 U.S.C. § 1252(c).  Nieto-Ayala's 1992 convictions for possession and distribution of cocaine are controlled substance offenses that fall within the scope of section 1182(a)(2).  See Sol v. Immigration and Naturalization Serv., 274 F.3d 648, 651 (2d Cir. 2001).

The Second Circuit recently held that the REAL ID Act also divests district courts of jurisdiction to review indirect challenges to removal orders.  See Delgado v. Quarantillo, 643 F.3d 52, 55 (2d Cir. 2011).  In Delgado, the government had reinstated the removal order of Delgado, a previously removed alien, and denied Delgado's I-212 application, which sought permission to reapply for admission after removal.  Id. at 54.  Delgado brought a mandamus action to compel USCIS to make a determination on the merits of her I-212 waiver application.  Id.  The Second Circuit held that even though the USCIS's grant of an I-212 waiver would not "per se prevent her removal," such a waiver was "a necessary prerequisite to her ultimate

6

goal of adjustment of status." Id. at 55.  The Second Circuit further reasoned that "'an adjustment-of-status challenge is inextricably linked to the reinstatement of [an alien's] removal order,' because 'a nunc pro tunc Form I-212 waiver of inadmissibility and the adjustment of status to that of [a lawful permanent resident]' would render the reinstatement order 'invalid.'"  Id. at 55 (quoting Morales-Izquierdo v. Dep't of Homeland Sec., 600 F.3d 1076, 1082-83 (9th Cir. 2006) (holding that the district court was without jurisdiction under the REAL ID Act to consider petitioner's challenge to the denial of his adjustment-of-status application)).  The Second Circuit concluded that under the REAL ID Act, the district court was without jurisdiction to consider Delgado's indirect challenge to her reinstatement order. Id. at 55.

**2.**

Here, Nieto-Ayala does not directly challenge his removal order.  Instead, Nieto-Ayala seeks to compel the Government to continue his enlargement on bond until his application for asylum is adjudicated by USCIS. (Compl. at 5-6.)  Although, unlike in Delgado, Nieto-Ayala does not seek to compel USCIS to act, if this Court were to grant the relief sought and compel the Government to allow Nieto-Ayala to remain on parole until USCIS adjudicates his

7

asylum application, then the Government would be without a mechanism to enforce the removal order until USCIS has adjudicated his asylum application. Thus, the effect of any stay by this Court would be to prompt USCIS to adjudicate Nieto-Ayala's asylum application, and like the I-212 application in Delgado, Nieto-Ayala's asylum application is "inextricably linked" to his removal order because if the asylum application is granted, then his removal order would be invalid. See Delgado, 643 F.3d at 55. This Court therefore is without jurisdiction under the REAL ID Act to consider Nieto-Ayala's indirect challenge to his removal order.

### C. Jurisdiction Under the Mandamus Statute

Further, even if this Court does not construe Nieto-Ayala's mandamus request as an indirect challenge to his removal order, this Court would be without jurisdiction to consider his petition under the mandamus statute, 8 U.S.C. § 1361.

It is well established that "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations," Kerr v. U.S. Dist. Court, 426 U.S. 394, 402 (1976), and that "jurisdiction under the mandamus statute is limited to actions seeking to compel the performance of a nondiscretionary duty." Duamutef v. Immigration and

Naturalization Serv., 386 F.3d 172, 180 (2d Cir. 2004) (emphasis removed) (dismissing mandamus petition that sought to compel execution of plaintiff's removal order because such execution was entirely within the Attorney General's discretion).  See also Heckler v. Ringer, 466 U.S. 602, 614 (1984) ("The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy . . . only if the defendant owes [plaintiff] a clear nondiscretionary duty."); Work v. United States ex rel. Rives, 267 U.S. 175, 177-78 (1925) (holding that if an act is within a federal officer's discretion, mandamus cannot be used to compel such an action); Yilmaz v. McElroy, 2001 WL 1606886 at *3 (S.D.N.Y. Dec. 17, 2001) (dismissing, pursuant to Fed. R. Civ. P. 12(b)(1), complaint that sought to compel action on plaintiff's application for residency because such action was "solely within the discretion of the INS").

"Parole is a matter of the Attorney General's discretion (and of the opinion of those she appoints) and may be ended without hearings or special forms."  Ofosu v. McElroy, 98 F.3d 694, 700 (2d Cir. 1996).  Specifically, "[t]he Attorney General at any time may revoke bond or parole authorized under [8 U.S.C. § 1226(a)]," and "[t]he Attorney General's discretionary judgment regarding the

9

application of this section shall not be subject to review." 8 U.S.C. §§ 1226(b), (e).

Here, even if this Court were to find that Nieto-Ayala is not indirectly challenging his removal order, this Court is without jurisdiction because the continuance of Nieto-Ayala's bond is a matter entirely within the discretion of the Attorney General.

Similarly, even if this Court were to find that Nieto-Ayala is seeking only a stay of his removal order until his asylum application is considered, Nieto-Ayala has pointed to no authority that suggests that ICE has a nondiscretionary duty to refrain from executing the removal order against him until Nieto-Ayala's asylum application has been adjudicated or that USCIS must adjudicate his asylum application before ICE executes the removal order. See Hanif v. Gantner, 369 F. Supp. 2d 502, 505 (S.D.N.Y. 2005) (holding that the court lacked jurisdiction under the mandamus statute to stay plaintiff's removal until USCIS had adjudicated his application for adjustment of status because plaintiff pointed to no authority "for the proposition that ICE has a nondiscretionary duty not to remove [plaintiff] until [USCIS] has [heard his application], or, conversely, that [USCIS] must fulfill

that duty prior to ICE's execution of the removal order").[2]

## CONCLUSION

For the above reasons, the Government's motion to dismiss pursuant to Rule 12(b)(1) is GRANTED and Nieto-Ayala's petition is dismissed.

SO ORDERED.

Dated: August  25, 2011

*[signature]*

Lawrence M. McKenna
U.S.D.J.

---

[2] Moreover, as the Government notes, under 8 U.S.C. § 1252(g), this Court does not "have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to . . . execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). See also Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999); Duamutef, 386 F.3d at 181. A claim seeking to stay a removal order arises from a decision or action by the Attorney General to execute removal orders and this Court therefore is without jurisdiction to hear such a claim. See Moussa v. Jenifer, 389 F.3d 550, 554 (6th Cir. 2004) (holding that the Attorney General's denial of a stay of removal is part of a decision to execute a removal order and thus, under 8 U.S.C. § 1252(g), the court was without jurisdiction to consider any challenge to the denial); Sharif v. Ashcroft, 280 F.3d 786, 787 (7d Cir. 2002) (holding that a request for a stay of removal until adjudication of additional administrative relief "'arises from' the Attorney General's decision . . . to execute a removal order").

11